Filed 10/13/25  P. v. Blake CA4/3
Reposted with updated filing date

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063039 |
| v. | (Super. Ct. No. 22CF2510) |
| ALEC SHAWN BLAKE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Affirmed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Caelle McKaveney, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Alec Shawn Blake of one count of kidnapping (Pen. Code,[1] § 207, subd. (a); count 1), one count of kidnapping to commit robbery (§ 209, subd. (b)(1); count 2), one count of forcible oral copulation (§ 287, subd. (c)(2)(A); count 3), one count of robbery (§§ 211, 212.5; count 4), and one count of assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); count 5). The jury also found true that defendant personally used a firearm in the commission of the offenses (§ 12022.53, subd. (b)).

The court granted the prosecution's motion to dismiss the aggravating factor that defendant used a firearm and sentenced defendant to state prison for a total term of 22 years to life as follows: (1) 15 years to life on count 3; (2) a consecutive term of seven years to life on count 2; and (3) a concurrent term of four years on count 5. The court also imposed and stayed punishment for the remaining convictions pursuant to section 654.

Defendant raises two arguments on appeal. First, he argues the court violated his constitutional rights by excluding evidence regarding a social networking application used by the victim. Second, he contends the court violated his constitutional rights by refusing to declare a mistrial due to juror misconduct. For the reasons below, we disagree with defendant's contentions and affirm the judgment.

FACTS

I.

PROSECUTION CASE

One morning around 4:50 a.m., the victim was walking to work in Santa Ana. Defendant, who was riding his bicycle, approached and pointed a

_____

[1] All further statutory references are to the Penal Code.

2

gun at the victim's side. Defendant warned the victim to not draw attention or he would shoot. He then asked the victim where he was going and instructed him to walk to a nearby park. The victim asked why defendant was doing this, and defendant replied, "'Well, someone has to be a victim today.'"

Once they reached the park, defendant asked the victim if he had any money. When the victim said he did not, defendant threatened to kill him and asked if he was "'a dick-sucking faggot.'" Defendant then forced the victim to perform oral sex on him and ejaculated in his mouth. The victim testified he gagged and felt nauseous.

After oral sex, defendant ordered the victim to clean his face and searched through his belongings. He took the victim's cellphone and asked him to disable the cellphone's password. While defendant continued searching, the victim raised his hands to indicate he was not resisting. Around this time, defendant said he wanted "'to make this a regular thing,'" which the victim interpreted to mean oral sex. Defendant also asked why the victim's hands were raised and repeatedly punched the victim, causing him to briefly lose consciousness. After the victim was on the ground, defendant continued to hit him. The victim believed defendant was holding a gun during this assault. Before leaving the scene, defendant took the victim's belongings, threw his bag over a fence, told him to stay on the ground for 30 minutes, and warned him not to report the incident.

After a few minutes, the victim sought help from nearby security and was taken to a hospital where he was examined. A sexual assault nurse examiner documented multiple injuries, including facial swelling, abrasions, and a hematoma inside the victim's cheek. The nurse concluded the injuries were consistent with the victim's account of what had happened.

3

After the incident, the victim received e-mail notifications of unauthorized purchase attempts made on his cellphone. He also found inappropriate messages had been sent to other users from his Instagram account without his knowledge.

Police traced orders placed from the victim's cellphone to defendant's address and confirmed the cellphone had pinged in that area. At defendant's residence, they found a bicycle and the victim's belongings. No firearm was found. DNA analysis confirmed defendant's genetic profile matched samples recovered from the victim's shirt, mouth, and cellphone.

II.

DEFENSE CASE

At trial, defendant testified he was bisexual, married to a woman, and had children. On the day of the incident, he was staying at his father's home due to marital problems. He left his father's home early in the morning because he "was horny" and "looking for a hookup . . . around park areas."

Upon seeing the victim, defendant had a "gut feeling" the victim was gay. He claimed they flirted while walking to a park. Defendant also admitted to receiving oral sex from the victim, asserting it was consensual and initiated by the victim. He denied threatening the victim, but he became angry when the victim suggested continued contact and hit the victim due to insecurity about his own sexuality. Defendant further admitted taking the victim's cellphone and using it to place orders and to send Instagram messages.

When initially questioned by police, defendant denied any involvement in the incident and claimed to have found the victim's wallet on the street. He testified he lied because he was nervous but told the truth when questioned about the sexual assault.

4

## DISCUSSION

Defendant contends the court violated his constitutional rights by excluding evidence about the victim's Grindr account, which he describes as a social networking application for gay, bisexual, transgender, and queer individuals. He specifically argues the victim lied to police about when he opened his Grindr account and that this evidence should have been admitted to challenge the victim's credibility. Defendant further claims juror misconduct tainted deliberations on the firearm enhancements and warranted a mistrial. We are not persuaded by defendant's arguments.

I.

### EXCLUSION OF EVIDENCE REGARDING THE VICTIM'S GRINDR ACCOUNT

*A. Relevant Background*

Before trial, the prosecutor moved in limine to exclude evidence about the victim's Grindr account. The prosecutor noted the police asked the victim if he had any "dating apps," and the victim responded he had a Grindr account when he lived in Northern California. The prosecutor argued evidence about the Grindr account was inadmissible under the rape shield law. Defendant's counsel opposed the motion, arguing the evidence was relevant to show the victim was gay or bisexual. The court deferred ruling on the matter.

Around a week later, defendant's counsel noted the victim told police he had a Grindr account for about four months, but he actually had the account for around four years. Given this inconsistency, defendant's counsel insisted the evidence was relevant to impeach the victim's credibility and to show police bias because investigators did not follow up after learning the victim had lied.

The court excluded the evidence. It first excused defendant's lack of compliance with the procedure required under Evidence Code section 782, which normally requires the defendant to file a written motion showing the proffered evidence is relevant to evaluating the victim's credibility. (Evid. Code, § 782, subd. (a)(1)–(2).) The court also acknowledged the proffered evidence was relevant "whether [it was] characterized as a lie or [the victim] was mistaken about when he opened the [Grindr] account." But the court excluded the evidence under Evidence Code section 352 because its probative value was substantially outweighed by the risk of undue prejudice, confusion of the issues, and undue consumption of time. The court added the evidence would be "back-dooring in impermissible character evidence." Finally, the court emphasized the victim's sexual orientation was irrelevant, but it clarified defendant could ask the victim whether he had truthfully told the defendant that he was gay.

## B. Applicable Law and Standard of Review

Under California's rape shield law, "specific instances of the complaining witness' sexual conduct . . . is not admissible by the defendant in order to prove consent by the complaining witness." (Evid. Code, § 1103, subd. (c)(1).) The rationale behind this rule is straightforward: a complainant's sexual conduct with others has little relevance to determining whether the complainant consented in the charged incident. (*People v. Chandler* (1997) 56 Cal.App.4th 703, 707.) The term "sexual conduct" includes not only sexual intercourse, but also behavior suggesting a willingness to engage in sexual activity. (*People v. Franklin* (1994) 25 Cal.App.4th 328, 334.) This may encompass social media content. (Evid. Code, § 782, subd. (b)(2).)

6

Evidence of the complaining witness' prior sexual conduct, however, may be admissible if it is "offered to attack the credibility of the complaining witness as provided in [Evidence Code] section 782." (Evid. Code, § 1103, subd. (c)(5).) To invoke this exception, a defendant must comply with the procedural requirements set forth in Evidence Code section 782. In the present case, the court excused compliance with those requirements because defendant did not have adequate time to do so.

Even when Evidence Code section 782 procedures are satisfied— or excused—the trial court still must assess the admissibility of the proffered evidence under Evidence Code section 352. The latter statute provides for the exclusion of evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review a trial court's decision concerning the admissibility of evidence under Evidence Code section 352 for an abuse of discretion. (*People v. Clark* (2019) 43 Cal.App.5th 270, 291.)

## C. *No Abuse of Discretion*

Here, the court did not abuse its discretion. Even assuming the Grindr evidence was relevant for impeachment purposes, its probative value was substantially outweighed by the probability that its admission would cause an undue consumption of time and undue prejudice. The discrepancy about how long the victim had a Grindr account did not meaningfully bear on the truth of either party's version of events, particularly because the victim and defendant never met on Grindr and had no prior contact. While defendant's counsel asserted his proposed questioning would be brief, the court reasonably found the total time—considering foundational matters,

7

questioning, and the prosecutor's rebuttal—would likely be greater. The court also properly recognized the risk that Grindr-related testimony could confuse the jury or invite improper inferences about the victim's sexual orientation or consent in violation of the rape shield law. (Evid. Code, §§ 782, 1103, subd. (c)(1).) The jurors specifically could have used the information to infer the victim must have consented to the interaction with defendant because he used an application associated with same-sex encounters. In short, the court's decision to exclude the evidence was not "'"arbitrary, capricious, or patently absurd."'" (*People v. Hall* (2024) 104 Cal.App.5th 1077, 1094.) Because the court did not abuse its discretion, we need not reach the parties' arguments regarding prejudicial error.

## II.

### DEFENDANT'S MISTRIAL MOTION

*A. Relevant Background*

Pursuant to CALCRIM No. 201, the court instructed the jury not to "use the Internet or a dictionary in any way in connection with this case, either on your own or as a group." During deliberations, the jury foreperson informed the court that Juror No. 139 conducted independent research on the Internet regarding potential penalties "for crimes with a handgun" and shared this information with the rest of the jury.

The court questioned both the foreperson and Juror No. 139. Juror No. 139 admitted she used her phone to research the penalty for gun possession and told the other jurors that a sentence was "serious, up to 20 years." She also said she told the jurors: "'It sounded like carrying a gun is a very serious crime, you know, in California.'" She noted the other jurors told her she should not have done any research, and she assured the court she did not research any other issue.

8

Defendant's counsel subsequently moved for a mistrial. He argued Juror No. 139's misconduct was prejudicial because the jury was exposed to incorrect sentencing information, believing the maximum penalty was 20 years when defendant faced a potential life sentence. He contended this misinformation could unfairly influence deliberations.

Before ruling on the motion, the court inquired if the jury had reached any verdicts. The jury confirmed it had returned guilty verdicts on all five counts before Juror No. 139's statements. But the jury had not made findings on the enhancements.

After the jury was excused, the prosecution requested the court admonish the jurors to disregard any information related to punishment. Defendant's counsel insisted on a mistrial even though the jury had reached verdicts on the substantive counts before the misconduct occurred.

The court then individually questioned each juror, including Juror No. 139, about his or her ability to disregard Juror No. 139's statements and ordered them to not consider punishment. Each juror confirmed he or she could disregard Juror No. 139's statements. The court accordingly denied the mistrial motion. The court explained: "In this case there was arguably some misconduct done by the juror. I think it can be cured at this point by ordering them to disregard any of it and I don't think there's a substantial likelihood of juror bias based on that information that was shared." The jury later returned true findings on the remaining enhancements.

B. *Applicable Law and Standard of Review*

A defendant has a constitutional right to a trial by an impartial and unbiased jury, which is violated if even one juror is biased. (*People v. Kocontes* (2022) 86 Cal.App.5th 787, 848.) Juror misconduct—such as a

9

juror's exposure to outside information—triggers a presumption of prejudice. (*Ibid.*)

"'[T]he presumption of prejudice is rebutted, and the verdict will not be disturbed, if a reviewing court concludes after considering the entire record, including the nature of the misconduct and its surrounding circumstances, that there is no substantial likelihood that the juror in question was actually biased against the defendant.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 98–99.)

Juror bias can rest on either of two grounds: (1) if the extraneous material, viewed objectively, was so inherently prejudicial that it was likely to influence a juror; or (2) if, based on the nature of the misconduct and the surrounding circumstances, there is a substantial likelihood a juror was actually biased against the defendant. (*People v. Kocontes, supra*, 86 Cal.App.5th at pp. 848–849 [noting factors such as the nature of the misconduct, how the information was obtained, jury instructions, and the strength of the evidence].)

Whether the presumption of prejudice has been rebutted is a mixed question of law and fact subject to our independent review. (*People v. Brooks, supra*, 3 Cal.5th at pp. 98–99.) But we defer to the trial court's credibility determinations and findings of historical fact if supported by substantial evidence. (*Ibid.*)

C. *No Prejudicial Misconduct*

Given Juror No. 139's independent research, defendant argues we should reverse the jury's true findings on the firearm enhancements. We conclude the misconduct did not warrant a mistrial.

At the outset, we acknowledge Juror No. 139's misconduct—i.e., independently researching a sentencing issue and sharing this information

10

with the jury. (*People v. Collins* (2010) 49 Cal.4th 175, 255; *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1466 [juror's online search for definitions of "'great bodily injury'" was misconduct].) This gave rise to a rebuttable presumption of prejudice. (*People v. Brooks, supra*, 3 Cal.5th at pp. 98–99.)

Here, the presumption of prejudice was rebutted because there is no substantial likelihood the jury was actually biased against defendant. After Juror No. 139 referenced sentencing information during deliberations, the other jurors immediately reminded her that her independent research was improper. The foreperson promptly reported the incident to the court. The court then responded with a thorough admonition, reminding jurors their verdict must be based solely on evidence presented at trial and instructing them to disregard Juror No. 139's statements. Each juror confirmed they could disregard Juror No. 139's statements. The court accepted the jurors' assurances, and we defer to that credibility assessment. (*People v. Brooks, supra*, 3 Cal.5th at p. 99.)

The record also does not suggest Juror No. 139's statements gained any traction during deliberations. The remark was isolated and brief, and there is no evidence any juror discussed, relied on, or repeated the information. Although defendant speculates the remark "rang the bell" that could not be "un-r[u]ng," our Supreme Court has rejected the notion that all punishment-related comments irrevocably taint the deliberative process. Speculation about punishment is "an inevitable feature of the jury system," and does not, by itself, demonstrate prejudice. (*People v. Dykes* (2009) 46 Cal.4th 731, 812.)

Finally, it is significant that Juror No. 139 informed the other jurors a sentence could be "serious, up to 20 years." This remark about the seriousness of punishment does not clearly indicate bias against defendant.

11

To the contrary, the statement may have reflected a recognition of the gravity of the jury's task and the potential consequences of conviction—a sentiment that could weigh in favor of caution and deliberative care, not against it. In this sense, the comment could just as readily be viewed as beneficial to defendant. Such an expression, devoid of any advocacy for a particular outcome, does not establish prejudice and falls far short of undermining the fairness of the verdict.

In short, there is no substantial likelihood any juror was actually biased against defendant. The court did not err by refusing to declare a mistrial.

## DISPOSITION

The judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

MOORE, J.

MOTOIKE, ACTING P. J.

12